IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE PEPE LEWIS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>JAMES WALKER, Warden,<br><br>　　　　Respondent. | No. C 08-4832 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on one of the claims set forth in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

As a result of the January 18, 2002 robbery of a Holiday Inn in San Jose, a jury in Contra Costa County Superior Court found petitioner and his co-defendants Todd Sweat and Karl Landry guilty of second-degree robbery (Cal. Pen. Code §§ 211, 212.5(c)) and false imprisonment (Cal. Pen. Code §§ 236, 237), and found petitioner and Sweat guilty of possession of a firearm by a felon (Cal. Pen. Code § 12021(a)(1)). The jury found true allegations that the three defendants committed the offenses in association with a criminal street

1  gang (Cal. Pen. Code § 186.22 (b)(1)), and found true various weapons allegations (Cal. Pen.
2  Code §§ 12022.53(b); 12022.5(a)(1)).  The trial court, after finding true allegations regarding
3  petitioner's prior convictions and prison terms (Cal. Pen. Code §§ 667.5(b), 667(a), 1170.12),
4  sentenced petitioner to a term of 24 years in state prison.  The California Court of Appeal
5  affirmed petitioner's conviction and sentence, and the California Supreme Court denied review.
6        The following summary of the evidence is taken from the opinion of the California
7  Court of Appeal.  *See People v. Sweat, et al.*, 2007 WL 2052131 (Cal. Ct. App. 2007).
8        Tim O'Connell worked at the registration counter at the Holiday Inn on Silicon Valley
9  Boulevard in San Jose.  He was on duty on the morning of January 18, 2002.  Two
10 African-American men were at and behind the counter when he returned, and they had the
11 lower halves of their faces covered by bandannas.  The man behind the counter pointed his gun
12 at O'Connell, threatened him, and directed him to lie flat on the floor. O'Connell lay down on
13 the floor in the back office, and heard "enough activity and conversation to lead [him] to believe
14 that there were three people."  The men stole his cell phone, a pager, two credit cards,
15 O'Connell's driver's license, and a small amount of cash.  The men found O'Connell's handcuffs
16 in his backpack from O'Connell's job as a security guard, and they handcuffed O'Connell's
17 hands behind his back.  After the men left, an employee came and freed him, and they called the
18 police.  It was later determined by hotel personnel that approximately $1,000 had been taken
19 from the hotel cash registers.
20       A latent fingerprint obtained from a piece of paper on the front counter. The fingerprint
21 was later identified as belonging to Fosselman.  Detective John Mitchell reviewed the security
22 tape which showed that three men were involved in the robbery inside the hotel. That afternoon
23 Detective Mitchell and Detective David Gutierrez then went to the home of Star Winter, who
24 had previously been a guest of the hotel.  Winters had been with a man who had caused
25 O'Connell some difficulties previously at the hotel and who resembled one of the robbers.
26 When they arrived at Winters's house, they saw an African-American male sitting inside a
27 black Chevrolet Cavalier in front of the residence, and another African-American male walking
28 toward the car from the front of the residence, talking on a cell phone. As the officers made a

U-turn so that they could see the license plate on the Cavalier, the second man entered the passenger side of the car and it drove off. The detectives pulled up behind the Cavalier, which then turned abruptly onto a sidewalk. Both men exited the Cavalier, leaving the doors open and the engine running, and jumped over a six-foot concrete wall. The officers stayed with the Cavalier and radioed other units in the area for help. Inside the Cavalier, on the front passenger seat, was O'Connell's driver's license. Also inside the Cavalier was an Enterprise car rental agreement for the Cavalier in the name of Paul Dawson. Attached to the agreement was an addendum adding defendant Sweat as a driver.

At trial, Officers Gutierrez and Mitchell both identified Sweat as the man they had seen driving the Cavalier. Mitchell testified that Fosselman was the man he had seen walking from Winters's house.

The impounded Cavalier was dusted for fingerprints on February 4, 2002. Fosselman's, Sweat's, and Landry's prints were found on the Cavalier, but Lewis's prints were not. On February 9, 2002, Detective Mitchell showed O'Connell the hotel security video recording of the robbery, stills taken from the video, and photographic lineups containing Fosselman's and Sweat's photos. In one photographic lineup, O'Connell identified Fosselman "as the person he had had problems with prior to the robbery," "the person he had a prior contact with." O'Connell was not able to identify Sweat in the other photographic lineup.

Winters talked with Detective Mitchell about what she knew about the Holiday Inn robbery. She said that Fosselman, her boyfriend, sometimes stayed with her at her home, and sometimes the two of them rented a room at the Holiday Inn in her name. The day before the robbery, Fosselman called Winters at home and asked her for $100. He arrived at her house between midnight and 2:00 a.m. on the morning of the robbery, and while they were standing at the front door talking, Winters saw a black car outside with three men inside it. She recognized Sweat, who was sitting in the front seat. She identified Lewis as the person who was sitting behind the front passenger seat. Fosselman contacted Winters later that afternoon. From down the street, Winters saw Fosselman run from her house and get into the car with Sweat. They drove past Winters without stopping.

3

Winters, Fosselman, and Sweat stayed at a Motel 6 that night. There, Fosselman and Sweat bragged that they had robbed a Holiday Inn with "Pep." They told Winters that a fourth person was involved, but that he did not go inside the hotel. They said that nobody was at the front counter when they arrived. They had one gun that they passed back and forth between them. Someone jumped over the counter, they handcuffed the clerk with handcuffs they found in the clerk's backpack, and then they took about $2,000. They said that they had the clerk's driver's license, but that the license fell out of Sweat's pocket when he pulled out the gun used in the robbery as they ran from the car. After jumping over a wall, Sweat threw the gun in a nearby dumpster. Winters testified at trial that even though the statements were made at a hotel, she told Detective Mitchell that all these statements were made to her at a Denny's Restaurant. She said this because she was afraid; she was with two African-American men at the hotel whereas Denny's is "out in the open."

Fosselman and Winters went to Stockton, and stayed at a hotel for a couple of nights. There, Winters met both "Pep and another guy" for the first time. She identified this fourth person at trial as Landry, but stated that she does not "know him by name...." She testified that Fosselman always referred to Landry as "Slick," and that defendant always referred to Lewis as "Pep." She further testified that while they were in Stockton, Fosselman repeatedly bragged about what happened during the Holiday Inn robbery but that he did not do so in front of either Lewis or Landry. He never told her what "Pep" had done during the robbery, other than jump over the counter, and she never heard Lewis or Landry talk about the robbery.

After the preliminary hearing in this matter, Detective Mitchell spoke to Antwan Richardson and Lydell Yarber. Yarber testified that he has known Sweat and Fosselman for about four or five years. He saw Sweat and met Lewis while they were all in county jail. Yarber never talked to either Sweat or Lewis about why they were in jail, but Lewis let Yarber read the police report. During the interview with Mitchell, Yarber stated that he, Sweat and Fosselman were fellow gang members before they all went to jail. Yarber saw Sweat, Lewis, and Landry together one day in jail and knew that they had been arrested for a robbery. Lewis had shown Yarber the police report. Lewis told Yarber that he, Sweat and Fosselman did the

4

robbery, and that he held a gun. Lewis also said that one day Yarber's brother gave him and his uncle a ride from San Jose to Stockton, and Yarber thought that this might have occurred around the time of the robbery.

Richardson testified that he has known Sweat for about 10 years and has known Fosselman for about eight years. In jail, Sweat showed Richardson the police reports in this case, and he told Richardson what happened. Later, after Richardson was moved to state prison, he wrote letters to Sweat at the jail. Richardson told Mitchell that Sweat, Fosselman, and a man from Stockton were involved in the robbery, but he testified that he got that information from the police report, not from Sweat.

San Jose Police Detective Tamara Sass testified as an expert on African-American criminal street gangs that the Fosselman, Sweat, Landry and Lewis were members of Crips street gangs. She testified that, in her opinion, the robbery at the Holiday Inn was committed in association with and for the benefit of a criminal street gang.

Nikiel Lewis, Lewis's sister, and Precious Lewis, his wife, testified that on January 17, 2002, Lewis and they attended a birthday party for Lewis's young son in Stockton. They left the party about 8:30 or 9:00 p.m. They testified that they did not think that Lewis is a Crips gang member. Precious Lewis also testified that she told an investigator working for Lewis's attorney in January 2003 that Lewis spent the rest of the night and the morning following the January 17, 2002 birthday party with her.

## ANALYSIS

**A. STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law

5

and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412 13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546 47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid*.

Under 28 U.S.C. ' 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the

6

California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 06 (1991).

**B.     ISSUES PRESENTED**

Petitioner's remaining claim for federal habeas relief is that his Confrontation Clause rights were violated when the trial court admitted out-of-court statements by two of his alleged accomplices, Sweat and Fosselman. The statements were made by Sweat and Fosselman to Winters about the crime, and they told her that petitioner was one of the participants. Sweat also described the crime to Richardson, but it is unclear whether petitioner's claim here is also based upon that conversation or simply upon the statements by Sweat and Fosselman to Winters. In any event, the analysis of Sweat's statements to Richardson is the same as that of Sweat's statement to Winters, below.

The California Court of Appeal correctly found that admission of Sweat's out-of-court statements implicating petitioner violated petitioner's rights under the Confrontation Clause. *See People v. Sweat, et al.*, 2007 WL 2052131, *10 (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Under *Bruton*, a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a non-testifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. 391 U.S. at 126, 135-36. Here, Sweat and petitioner were co-defendants, they were tried jointly, Sweat did not testify, and his out-of-court statements to Winters implicated petitioner. As a result, the admission of Sweat's statements to Winters violated petitioner's confrontation rights under *Bruton*.

The California Court of Appeal also correctly found that because Fosselman's case was resolved separately, and he was not tried jointly with petitioner, *Bruton* does not apply to the admission of his hearsay statements to Winters. *Sweat*, 2007 WL 2052131 at *10 (citing *Bruton*, 391 U.S. at 126). It was nevertheless error for the trial court to admitted Fosselman's statements to Winters implicating petitioner in the crimes. These were non-testimonial out-of-court statements, and as such admitting them violates the Confrontation Clause unless they bear "adequate indicia of reliability," meaning that they fall within a "firmly rooted hearsay exception" or have "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S.

7

56, 66 (1980); *see Parle v. Runnels*, 387 F.3d 1030, 1038-40 (9th Cir. 2004) (applying *Roberts* to a Confrontation Clause claim involving non-testimonial hearsay). Accomplice statements implicating the defendant, such as Fosselman's statements implicating petitioner, do not fall within a firmly rooted exception to hearsay rule under *Roberts*. *See Lilly v. Virginia*, 527 U.S. 116, 134 (1999). The California Court of Appeal reasonably found that Fosselman's statements were not made under circumstances offering particularized guarantees of trustworthiness because Winters testified that Fosselman was bragging, Fosselman had the motivation to embellish the story in order to enhance his reputation in the gang, and he may have wanted to impress Winters who was his girlfriend. *Sweat*, 2007 WL 2052131 at *10-14 (distinguishing *United States v. Boone*, 229 F.3d 1231 (9th Cir. 2000), and *Padilla v. Terhune*, 309 F.3d 614 (9th Cir. 2002)). As Fosselman's hearsay statements to Winters do not fall within a firmly rooted hearsay exception and were not made under trustworthy circumstances, their admission violated petitioner's confrontation rights.

Although the admission of the out-of-court statements by Sweat and Fosselman implicating petitioner violated his confrontation rights, the state appellate court reasonably found this error to be harmless. Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004); *see also United States v. Rashid*, 383 F.3d 769, 775-77 (8th Cir. 2004) (applying harmless error analysis to claim of *Bruton* error). The California Court of Appeal applied the "harmless beyond a reasonable doubt" standard, *Sweat*, 2007 WL 2052131 at 14, which is the correct harmless error standard on direct review, *see Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Nielsen*, 371 F.3d at 581. For purposes of federal habeas corpus review, the harmless error standard applicable to violations of the Confrontation Clause is different; the standard is whether the inadmissible evidence had a substantial and injurious effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The error was harmless because there was other, stronger evidence of petitioner's guilt than the statements by Sweat and Fosselman about his involvement in the crimes. In particular, petitioner told Yarber that he participated in the crimes. Petitioner's own confession is much

more damning than representations by Sweat and Fosselman to Fosselman's girlfriend that he participated in the crimes. As the California Court of Appeal reasonably explained, unlike when Sweat and Fosselman were talking to Winters, there was no evidence that petitioner was bragging to Yarber or that he had any reason to embellish or fabricate his involvement in the crime. *Sweat*, 2007 WL 2052131 at *14. Moreover, although Yarber's criminal history and gang membership may damage his credibility, this is equally true of Sweat and Fosselman. In addition, to petitioner's confession to Yarber that he committed crimes, Winters had testified that she recognized petitioner as the person in the Cavalier with Sweat and Fosselman shortly before the robbery. In light of the other, stronger evidence of petitioner's guilt, petitioner would have likely been convicted even if the out-of-court statements by Fosselman and Sweat had been properly excluded. Consequently, the error did not have a substantial and injurious effect on the verdict, and the state court reasonably found the error harmless.

Petitioner is consequently not entitled to habeas relief on his claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: March   16  , 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\LEWIS832.RUL.wpd

9